**SIMMONS FIRST NATIONAL BANK, Administrator of the Estate of Joe Lee Kastner, Deceased, and Guardian of the Estate of Mary Ann Brewer, An Incompetent; Carl Brewer; and Paul Beckham and Christine Beckham, His Wife, Plaintiffs,**

v.

**PAPCO, INC.; Kemper Corporation and National Loss Control Service Corporation, Defendants.**

**No. PB–C–82–39.**

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

Nov. 7, 1983.

Sandy S. McMath and Winslow Drummond, Little Rock, Ark., for plaintiffs.

R.T. Beard, III and Stephen Matthews, Pine Bluff, Ark., for defendant PAPCO, Inc.

James D. Storey, Little Rock, Ark., for defendant Nat. Loss Control Service Corp.

## SUMMARY JUDGMENT

EISELE, Chief Judge.

Pending before the Court are two motions for summary judgment filed by the respective defendants PAPCO, Inc. and National Loss Control Service Corporation (NATLSCO). For the reasons stated below, the motions will be granted and the case dismissed.

This case arises out of an accident which occurred at the caustic tank plant tank farm at the International Paper Company ("IPC") plant located at Pine Bluff, Arkansas. There is no dispute as to the facts relating to the accident. On the morning of December 21, 1981, two separate and totally unrelated operations were being conducted in the caustic plant area. A tank containing sodium hydrosulfide had developed a leak near its top. In order to repair the leak, workmen were "drawing dawn" the level of chemical in the tank by means of a pump located at the tank's base and pumping the chemical to another area at the plant. Because it was determined that the sodium hydrosulfide had frozen or crystallized, steam was injected into the

line at the pump pursuant to standard operating procedure. Apparently, this caused a simple fiberous material type gasket on the pump to rupture, which in turn allowed sodium hydrosulfide to leak onto the ground and then flow into the grated open sewer line, the purpose of which was to drain off spilled chemicals.

At the same time this repair was being undertaken, workmen were injecting steam into a separate pipeline carrying spent sulfuric acid because the acid had also frozen or crystallized in this line. The site of this activity was some 200 feet from the activity relating to the sodium hydrosulfide tank and apparently neither group of workers was aware of what the other was doing. In the course of unthawing the sulfuric acid pipeline, using this standard procedure, some of the acid was flushed onto the ground and ran into another branch of the grated open sewer line.

When the two chemicals now flowing into the sewer (in which also flowed fresh water) met at a juncture, deadly hydrogen sulfide was produced which caused the death of plaintiff Joe Kastner and injured plaintiffs Mary Ann Brewer and Paul Beckham, all of whom were in the immediate area.

Plaintiffs have not brought suit against International Paper Company since its liability is apparently covered exclusively by workers compensation insurance. Plaintiffs have brought suit against PAPCO and NATLSCO on the theory that those defendants were negligent and their negligence was in part the cause of plaintiffs' injuries. Both defendants have moved for summary judgment, mainly on the ground that neither owed any duty of care toward the plaintiffs.

*The Claim Against PAPCO*

PAPCO is a wholly owned subsidiary of International Paper Company with a static employment of less than fifty (50) employees. PAPCO is a construction company which does contracted construction work for IPC at various IPC facilities. Uncontradicted affidavits filed by various employees of PAPCO establish that PAPCO does not employee engineers, chemists or safety personnel. When PAPCO is awarded a job at an ICP facility, a full-time PAPCO employee is designated as "Project Manager" at the site and he hires through the local union hall the appropriate craftsman to perform the contracted work. It is also uncontradicted that all work done by PAPCO is based upon plans and specifications prepared by IPC engineers.

In December of 1979, PAPCO removed and replaced a salt cake mix tank into which ran the pipeline carrying sulfuric acid. The work was done pursuant to IPC specifications and upon completion of the work, it was turned over to IPC which inspected the work, accepted it and put the salt cake mix tank back into operation.

At some later point in time PAPCO contracted to clean and repair the grated open sewer, which had a sludge and muck buildup and was crumbling in certain spots. Again, PAPCO did the work as specified by IPC (which was responsible for the sewer's original design and construction), turned it over to IPC, which inspected it, accepted it and returned it to operation.

There is no contention by plaintiffs that some defect in the actual work done by PAPCO on either of these two jobs caused or contributed to their injuries. Rather, plaintiffs argue that PAPCO had a duty to warn of the potential hazards in the design of the sewer system in that it might permit certain chemicals to mix, causing deadly results. In support of their theory, plaintiffs refer the court to regulations promulgated by the Occupational Safety and Health Administration (OSHA), 29 CFR § 1910.12 et seq. and § 1926.16. Plaintiffs' logic is that because PAPCO is a licensed general contractor, it is jointly liable with IPC for compliance with OSHA regulations, one of which, 29 CFR § 1926.21(b)(3), provides:

> Employees required to handle or use poisons, caustics, and other harmful substances shall be instructed regarding the safe handling and use, and be made aware of the potential hazards, personal

hygiene, and personal protective measures required.

The Court does not read the regulations as imparting the meaning ascribed to them by plaintiffs. Section 1926.16(c) is pertinent:

> To the extent that a subcontractor of any tier agrees to perform any part of the contract, he also assumes responsibility for complying with the standards in this part with respect to that part. Thus, the prime contractor assumes the entire responsibility under the contract and the subcontractor assumes responsibility with respect to his portion of the work. With respect to subcontracted work, the prime contractor or subcontractors shall be deemed to have joint responsibility.

PAPCO was responsible to perform basic repair work. All engineering, plans, specifications, designs and inspections were to be performed by IPC. Clearly PAPCO was not responsible for instructing IPC's employees on the hazards of caustic substances merely because it contracted to repair the sewers and a tank under the strict specifications of IPC. Affidavits of PAPCO supervisory employees also show that they were not even aware or made aware of what chemicals were piped into the salt cake tank or flowed into the grated open sewer. Finally, it is evident that IPC designed and constructed the sewers and tank facilities, and PAPCO's job was simply to repair them on one occasion. At most, under the regulations, PAPCO would have been responsible only to instruct *its* employees on the hazardous nature of caustic substances.

Construing the facts most favorably toward plaintiffs, the Court must conclude that PAPCO owed no duty of care to the plaintiffs with respect to the injuries they suffered. There was no contractual duty, no assumed duty, nor any regulatory duty requiring that PAPCO warn plaintiffs (employees of IPC) of the potential danger presented by the grated open sewer system which was designed, engineered, constructed, maintained and inspected by IPC.

### The Claim Against NATLSCO

Plaintiffs contend that NATLSCO performed a series of surveys pursuant to a contract with IPC whereby NATLSCO undertook to provide expert safety evaluations for the purpose of assisting IPC in protecting the safety of non-IPC personnel. Plaintiffs argue that because hazardous gases can be generated in non-public areas of the IPC plant and diffuse into public areas, NATLSCO had a duty to inspect those non-public areas.

In June of 1979, NATLSCO signed a contract with IPC whereby NATLSCO agreed to provide both Claims Services and Loss Control Services at approximately seventy-four (74) IPC locations, including the plant at Pine Bluff. With respect to the Pine Bluff plant, however, NATLSCO was to provide only loss control surveys as required by IPC. The purpose of such surveys, as set forth in the contract, was "to analyze the facility loss experience, evaluate the loss control program, conduct physical hazards surveys, and to assist management in improving their safety program."

The contract makes it clear that surveys regarding liability for worker's compensation claims were not to be performed at the Pine Bluff plant. In his affidavit, Arthur D. Odom, Vice President of Safety Services for NATLSCO, states that IPC engaged NATLSCO to inspect only those areas at the Pine Bluff plant that were frequented by the general public and not areas in which injuries were covered by worker's compensation insurance. Mr. Odom also stated that at no time did IPC request NATLSCO to inspect the area in which the accident occurred, which is the subject of this suit, and at no time did NATLSCO gratuitously conduct a safety inspection of that area.

In his deposition taken by plaintiffs, Mr. Odom made it clear that when a NATLSCO safety engineer visited an IPC facility to perform the loss control survey, IPC would instruct him as to which areas he should inspect and would expressly exclude him from areas where he was not to go. From

the deposition of Mr. Joe Spencer, regional coordinator of safety services for IPC, it is clear that IPC provided its own safety services for those areas of its plants where the general public was excluded and where the persons usually working were IPC employees covered by worker's compensation insurance.

In sum, the Court finds that no duty, either contractual or assumed, was imposed on NATLSCO to inspect or conduct liability surveys in non-public areas of the IPC plant at Pine Bluff. NATLSCO admits that if it were inspecting a public area and could view an adjacent non-public area which might create a risk to the public, there might be a duty to inspect that area or to at least note the problem to IPC. Nevertheless, plaintiffs stretch this theory too far by arguing that because gas can be generated in non-public areas at the plant and can then travel to public areas, NATLSCO had a duty to inspect all areas where such harmful gas could be accidently generated. Under plaintiffs' theory, the IPC–NATLSCO contract would be rendered meaningless and NATLSCO would *always* have the duty to inspect the *entire* IPC plant, both public and non-public areas, to look for potential deadly gas generation problems.

In conclusion, the Court finds that no material question of fact exists with respect to the issue whether defendants owed a duty toward the plaintiffs. There being no duty owed, there can be no negligence by the defendants. Therefore, their respective motions for summary judgment must be granted.

IT IS, THEREFORE, ORDERED that each of the defendants' motions for summary judgment be, and they are hereby, granted and the case is hereby dismissed.